## CITY OF HOUSTON v. TOD et al.*

(Court of Civil Appeals of Texas. Galveston.
Dec. 14, 1923. Rehearing Denied
Jan. 22, 1924.)

1. Schools and school districts ☞32—Power of city constituting independent school district to include the whole or part of adjacent districts stated.

It is within the power of the Legislature to provide, as in Vernon's Ann. Civ. St. Supp. 1922, art. 2815c, that, whenever the limits of an incorporated city or town which constitutes an independent school district are extended to embrace the whole or part of another school district, the portion of that district embraced within the extension shall become a part of the district constituted by such city or town, which power may be delegated to cities which by their charters constitute independent school districts, nor is it in conflict with Vernon's Sayles' Ann. Civ. St. 1914, art. 2856b, which applies only to voluntary diminution by vote of the residents of a school district.

2. Schools and school districts ☞41 (2)—Annexation of part of school district to city held not defeated by failure to expressly assume part of debt of district.

Failure of a city, which constitutes an independent school district, upon extending its limits so as to include part of an adjacent district which thereupon became part of the district constituted by the city, to provide for the assumption by it of its proportionate part of the indebtedness of the district diminished by the extension, does not render such exten-

sion void, since Vernon's Ann. Civ. St. Supp. 1922, art. 2815c, definitely fixes the liability of the city for such indebtedness.

**3. Municipal corporations ⬅⟹868(1)—Matter held not "debt" within constitutional provision against creating debts without provision for payment.**

The extension of the corporate limits of a city in such a manner as to include part of an adjacent school district and render it liable for part of the district's indebtedness is not the creation of a "debt" within the meaning of the constitutional provision which declares that no debt shall be created by any city unless provision be made at the time of its creation for its payment, so as to render the extension void in the absence of any provision for payment of the liability thereby incurred.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**4. Schools and school districts ⬅⟹40—Validity of extension of limits held not subject to collateral attack.**

In a suit to enjoin a city from the levy and collection of taxes in its municipal capacity and as independent school district upon property recently included within an extension of its corporate limits, the validity of the extension made under authority of the Legislature by an ordinance not void upon its face, followed by an exercise of municipal authority, cannot be collaterally attacked.

Error from District Court, Harris County; J. D. Harvey, Judge.

Suit by Mrs. Osceola E. Tod and others, against the City of Houston. From decree for plaintiffs, defendant brings error. Reversed and rendered.

Sewall Myer and W. Ray Scruggs, both of Houston, for plaintiff in error.

Sam R. Merrill, J. S. Bracewell, and H. H. Cooper, all of Houston, for defendant in error Tod.

A. C. Van Velzer, of Houston, for defendants in error Harrisburg Independent School Dist. and Hanner.

PLEASANTS, C. J.   This is a suit by appellees to enjoin the levy and collection of taxes by appellant in its municipal capacity and as an independent school district upon property owned by appellee Tod and described in the petition, on the ground that the property is not within the corporate limits of the city of Houston or the Houston independent school district as the same are legally fixed and constituted. The petition sets out at length the various acts of the city in what is alleged to have been an illegal and unauthorized attempt of appellant to extend its corporate limits so as to include the property involved in the suit.   It further alleges the levy and threatened collection of taxes on the property by the appellant.   The grounds upon which the extension of the city limits

is alleged to be illegal are thus stated in appellees' brief:

"Defendant in error specifically alleged that the city of Houston was an independent school district, operating as a part of the city of Houston, and that the taxes assessed by said city of Houston were apportioned between the government of the city corporation as such, and the government of the school district; and also alleged that the defendant in error's property was situated in common school district No. 20 of the county of Harris, and that bonds had been voted in said school district and defendant in error's property pledged as security for such bonds, and that the city of Houston had no school facilities in any adjacent territory to the property of the defendant in error, while the school facilities of the common school district No. 20 was adjacent to the property, and convenient to it, and that the said plaintiff in error had never paid, nor made any provisions to pay, any part of said indebtedness of said common school district No. 20, so as to relieve the property of this defendant in error, and other property like situated, from the payment of its proportionate share of the aforesaid indebtedness of said common school district No. 20.

"Said school district and said city were each assessing taxes against the property of the defendant in error for school purposes.

"Defendant in error specifically alleged that the action of the city of Houston in extending its boundaries was in violation of section No. 56 of article 3 of the state Constitution, in that it was an attempt by the Legislature to interfere in the internal affairs of said city of Houston, and it constitutes a clear discrimination between the citizens of said city of Houston, in that it denies to such residents that may be located within the limits as so extended, the benefits of the taxation of said city, and that it denied to the defendant in error the benefits of public utilities of said city, and that it was illegal and void, in that it attempts to take the property of defendant in error and other like property, situated within common school district No. 20, and subject the same to the payment of taxes to said city of Houston, without making any provisions to take care of the bonded indebtedness of said common school district No. 20, nor to relieve the property of this plaintiff, and other like property, from the obligation so to do, and that the taxation of defendant in error's property by said plaintiff in error for school and municipal purposes is unconstitutional, and constituted double taxation of defendant in error's property.

"It was also alleged that it made no provisions for giving to the defendant in error, or others like situate, any benefits of the schools or of the municipal utilities."

On March 1, 1919, the defendant city of Houston (plaintiff in error) filed its answer containing a general demurrer and general denial, and denying that it has ever attempted to assess and collect taxes outside its corporate limits.   That the property of plaintiff was inside the general corporate limits of the city of Houston by reason of ordi-

nances of 1916 extending its city limits, an ordinance of January 16, 1918, calling an election of the qualified voters to adopt an amendment to the city charter taking into the city all of Houston Heights and fixing the city limits by metes and bounds, which metes and bounds voted upon also included a strip of land embracing a part of old school district No. 20, including the property of plaintiff. That said election carried and said charter was accordingly amended.

Defendant further alleges that plaintiff by its action made a collateral attack upon the corporate limits of the city, and that a direct action is required in order to attack the validity of the annexation of territory or the extension of the city limits.

The Harrisburg school district and W. C. Hanner filed petitions in intervention in which, after alleging the creation, on June 18, 1884, by the commissioners' court of Harris county, of common school district No. 20, and the fixing by said court of the boundaries of said district on August 14, 1911, so as to include the property involved in this suit, it is alleged in substance:

"That thereafter, on August 16, 1911, said common school district No. 20 issued certain bonds in amount $15,000, due in 40 years. That other bonds were subsequently issued. That on April 27, 1914, the commissioners' court changed the boundaries of said district No. 20 by adding additional territory. That defendant city of Houston, by ordinance passed January 24, 1916, undertook to change the boundaries of the city of Houston and Houston independent school district by taking therein property which was a part of said common school district No. 20. That since the passage of said ordinance the city of Houston, which constitutes the Houston independent school district, has collected taxes on all of said property described in said ordinance which is within said district No. 20. That said ordinance is void, and that the city had no authority to take the property out of said common school district No. 20 and add it to the boundaries of the said city of Houston. That by said ordinance the defendant has taken away the securities of the bonds which were issued by said common school district No. 20, which said bonds are still outstanding and prevents said district, and prevents its successor, the Harrisburg independent school district, from levying a tax on said property located in said school district, and which was taken by defendant into its boundary limits, which tax was by said common school district and is by Harrisburg independent school district, its successor, to provide funds to pay the interest on said bonds and to create a sinking fund for their payment. That the value of the property left in said district by said ordinance is insufficient at the rate of tax allowed by law to be levied to pay the interest on said bonds and to create a sinking fund for their payment, and that the vested rights of the bondholders, including intervener, W. C. Hanner, have thus been taken away and the security on said bonds greatly impaired. That the defendant city of Houston has collected taxes on said property which is a part

of the Harrisburg independent school district, and has never paid or offered to pay the common school district No. 20, nor its successor, Harrisburg independent school district, any part of said bonded indebtedness nor any interest on the same, nor has it over recognized any liability therefor.

"That the Legislature of Texas, by special act of 1919 (Sp. Laws 1919, c. 72), incorporated the Harrisburg independent school district and fixed the boundaries thereof the same as common school district No. 20, and that the Legislature took no account of said ordinance of defendant city of Houston. That if the ordinance extending the city limits be upheld that the vested rights of the owners of the bonds would be taken away, that the security of the bonds would be impaired, and that the bondholders would be required to accept different securities for their bonds than existed when issued. That Harrisburg independent school district is successor to common school district No. 20 and entitled to all of the rights and privileges of the said common school district No. 20. Intervener, W. C. Hanner, alleges that he is the owner and holder of some of said bonds."

The trial in the court below without a jury resulted in a judgment in favor of the plaintiff and interveners, granting "a perpetual injunction from forever collecting, receiving, or attempting to collect or receive taxes for the years 1917 and 1918, upon the lots in controversy, and enjoining them from collecting or receiving taxes on the land and premises described, and declaring null and void any assessments or levies of taxes thereon."

Upon the trial in the court below the parties presented an agreed statement of facts, from which the following facts are taken:

Plaintiff owns the lots claimed and described in her petition as lots 15 to 24, inclusive, of the town of Harrisburg. These lots are situated about 6 miles in an easterly direction from the courthouse of Harris county, which is near the center of the city of Houston, and are within 2,500 feet of the thread of the Houston Ship Channel. These lots were, on April 18, 1913, and have been at all times subsequent thereto, situated in common school district No. 20 of Harris county as such district was laid out and defined by the commissioner's court of Harris county, and the territory constituting said district is embraced within the boundaries of Harrisburg independent school district, which was created by a special act of the state Legislature in 1919.

In 1913 the city of Houston, acting under the authority of article 783a, Vernon's Sayles' Ann. Civ. St. 1914, extended the city limits for a distance of 20 miles down the ship channel eastwardly from said city, so as to include the lands on either side of the channel for a distance of 2,500 feet from the thread of the channel.

Thereafter, in 1916, the city council extended the general boundaries of the city so as to include a portion of the territory em-

braced in the extension made in 1913, before mentioned. The territory embraced in the 1916 extension embraces land not included in the 1913 extension, and a portion of the 1916 extension, lying immediately around the turning basin, is well settled. No question as to the legality of the extension as to this part of the territory is raised. That portion of said extension on the south side of the channel, below the turning basin, which includes the property of appellant, is sparsely settled and by reason of its location and surroundings is not easily accessible from the city of Houston as the boundaries of the city existed prior to the 1916 extension. The territory from the turning basin down to the property of plaintiff is about 1½ miles in length and 2,500 feet in width.

In addition to the foregoing facts, the agreement contains the following:

"That at the time the city passed the ordinance extending the boundaries so as to include the property in controversy, such property was not a part of any incorporated town or city or village.

"That it has been proven that the city has exercised the municipal functions over the territory included within the ordinance of 1916, by levying, assessing and collecting taxes in said territory since that time, by issuing building permits, and that said territory has been continuously treated and regarded by the city authorities as a part of the city of Houston since the passage of said ordinance of 1916.

"It is agreed that so far as the city engineer of the city of Houston knows, there has been no expenditure of the public funds in this territory since it has been added by the ordinance.

"That it is shown that the city has no public school building situated within this territory and that the nearest school to the property in controversy maintained by the city is approximately 4 miles away, and the nearest high school maintained by the city is approximately 6 miles from this property, and that the school building of common school district No. 20 (now embraced in Harrisburg independent school district) is situated within about 2 blocks of this property; and that there are approximately 10 scholastics within the territory and adjacent and living near the property of plaintiff in controversy.

"That the city maintains no fire station within this added territory.

"That from the city of Houston down the Harrisburg Road, which connects the city of Houston as it existed prior to the extension of the city limits and with that portion of the property in controversy, the territory along said Harrisburg Road is thickly settled, and that the said Harrisburg Road, passing from said city of Houston to said territory added by said ordinance, passes through an incorporated town, to wit, Magnolia Park, that intervenes between said property and said city. That said added territory, however, is not segregated from the city of Houston as it existed prior to such extension.

"That said extension, which includes the property in controversy, was made by ordinance of the 17th day of July, 1916, duly passed by the city council of the city of Houston. The

property in controversy, but not (all) the territory included by the ordinance of 1916, was embraced within the ordinance of 1913, which extended the city limits down the channel for channel purposes only.

"Both plaintiff and defendant introduced (an) ordinance passed by the city of Houston by its council on January 16, 1918, submitting to the qualified voters of said city the question of the consolidation of said city of Houston with the city of Houston Heights, in which the boundary lines of the said city of Houston as submitted included the territory which included the lots in controversy, and said ordinance contained the following language:

" 'Provided, that nothing herein or by reason hereof is to be construed to in any wise affect, curtail, or abandon the jurisdiction of the city of Houston over that territory not included herein, which was acquired and obtained by virtue of that certain ordinance passed by the city council of said city on the 18th day of April, 1913, entitled: "An ordinance extending the corporate limits of the city of Houston eastwardly in a general direction with Buffalo bayou and the Houston Ship Channel, so as to include in said city the said navigable stream and the land lying on both sides thereof for a distance of twenty-five hundred (2,500) feet from the thread of said stream, to a distance of twenty (20) miles in an air line from the present eastern boundary of said city as established by the city charter granted by the Legislature of the state of Texas in the year 1905." '

"It is agreed that common school district No. 20 had issued and outstanding on April 18, 1913, bonds in the sum of $50,000, and that said bonds are unpaid, and some of them are held by interveners, and that the property of plaintiff above described was subject to taxation for the purpose of paying said bonds so issued by said school district, and that said common school district No. 20 has heretofore, by vote of the resident taxpayers, duly authorized the assessment and collection of a tax of 50 cents on the $100 valuation of property within said district for the maintenance of said school in said common school district No. 20, and the payment of the sinking fund and interest on the bonds issued therein."

Under appropriate assignments and propositions appellant assails the judgment of the court below on the following grounds:

First. That the city of Houston, in extending its limits so as to include the property of appellee, Mrs. Tod, having acted under authority conferred upon it by law, and the territory included in such extension being a de facto portion of the city over which the city has exercised its municipal functions by levying, assessing, and collecting taxes and by issuing building permits ever since the passage of said ordinance of extension in 1916, the validity of such extension cannot be attacked collaterally in a suit of this character, but only by suit brought for that purpose on the relation of the state.

Second. That an incorporated city which by its charter is constituted an independent school district may extend its limits so as

to include a part of an adjacent common school district, and the fact that such city does not, at the time the ordinance making such extension is passed, or subsequent thereto, expressly assume to pay its proportional part of the bonded indebtedness of the school district whose territory has been invaded, does not render such extension void.

We think both of these grounds of objection to the judgment are sound. We shall consider these propositions in inverse order to that in which they are presented.

The authority of the city of Houston to extend the city limits by ordinance of the city council is expressly conferred by article 1, § 2b, of the charter of the city, which was granted by special act of the Legislature. There is no limitation upon this grant of power by the Legislature, and no general act of the Legislature prohibiting the extension of the boundaries of a city which constitutes an independent school district so as to contain within such boundaries portions of adjacent common or independent school districts. On the contrary, the right by such extension to include territory taken from adjacent school districts is expressly recognized by article 2815c, Vernon's Ann. Civ. St. Supp. 1922, which provides:

"Whenever the limits of any incorporated city or town within this state, which city or town constitutes an independent school district shall be so extended or enlarged, or shall have been so extended or enlarged, as to embrace within the limits of such incorporated city or town the whole or any part of any independent or common school district adjacent to such incorporated city or town, that portion of such adjacent independent or common school district so embraced within the corporate limits of such incorporated city or town, shall thereafter become a part and portion of the independent school district constituted by such incorporated city or town."

[1] It cannot be doubted that the Legislature has such power, and it is well settled that this power of the Legislature may be delegated by it to incorporated cities which by their charters are constituted independent school districts.

This authority to extend the limits of a city which is an independent school district so as to include within its boundaries portions of the territory of adjacent school districts is not in conflict with article 2856b, Vernon's Sayles' Ann. Civ. St. 1914, as this article only applies to a voluntary diminution or change of the territory of independent school districts by vote of the residents of such district; and our school laws as a whole, we think, clearly provide for the enlargement of a city independent school district by diminishing, if necessary, the territory of adjacent independent or common school districts. Washington Heights Independent School District v. City of Fort Worth (Tex. Civ. App.) 251 S. W. 341.

[2] The case cited also sustains appellant's contention that the failure of the ordinance making the extension to provide for the assumption by the city of its proportionate part of the bonded indebtedness of the district, the territory of which is diminished by the extension, does not render such extension void. The statute (article 2815c, Vernon's Ann. Civ. St. Supp. 1922) fixes the liability of the city for its proportion of such indebtedness, directs how such proportion shall be ascertained, and further directs that the city shall pay its proportionate part of such indebtedness either directly to the bondholders or through the officers of the district by which the bonds were issued. This is an enforceable liability of the city which fully protects the bondholders and the district issuing the bonds.

We cannot agree with appellees that the failure of the city so far to meet this liability renders void, or in any way affects, the validity of the extension.

[3] We are also unable to discover any merit in the contention that the liability incurred by the city in extending its limits, by reason of the article of the statute before cited requiring the city to pay its proportion of the bonded indebtedness of the annexed territory, was the creation of a debt by the city in the meaning of the constitutional provision which declares that no debt shall ever be created by any city unless provision be made at the time of its creation for its payment, and that such extension must be held void because no provision was made at the time of the extension for the payment of the liability thereby incurred.

We think the proposition answers itself. The quoted provision of the Constitution can have no application to a liability created by the Legislature in adjusting the equities arising from the practical operation of the statutes regulating the creation and changing of school districts in the advancement of the educational interests of the state. That provision of the Constitution clearly applies only to debts directly created or contracted by the city in the exercise of its functions of municipal government.

[4] This brings us to a consideration of appellant's proposition that the question of the validity of the extension of the city limits so as to include appellees' property cannot be raised collaterally in a suit of this character.

The city, in making the extension, having acted under authority conferred upon it by law, and the ordinance making such extension not being void on its face for want of authority in the city council to pass it, or for any other reason, and the city having assumed and being now in the exercise of municipal authority over all of the annexed territory, the question of whether Mrs. Tod's property was so situated that its inclusion in

the extension was a wrong and injustice to her cannot be raised in this suit.

The stability of municipal boundaries and the orderly and efficient administration of municipal government requires that the judgment of the city authorities, empowered by law to fix the boundaries of the municipality, as to the propriety or justice of including particular property within such boundaries, cannot, after such boundaries have been fixed, be questioned by the owner of the property unless the state, through its proper officers, join in a suit brought directly for that purpose. We think this conclusion is sustained by an unbroken line of authorities. Ex parte Koen, 58 Tex. Cr. R. 279, 125 S. W. 401; State v. Dunson, 71 Tex. 65, 9 S. W. 103; Cohen v. City of Houston (Tex. Civ. App.) 176 S. W. 809; Cohen v. Houston (Tex. Civ. App.) 205 S. W. 757; City of Carthage v. Burton, 51 Tex. Civ. App. 195, 111 S. W. 440; Railway v. Bratcher, 54 Tex. Civ. App. 10, 118 S. W. 1091; Short v. Gouger (Tex. Civ. App.) 130 S. W. 267; Graham v. Greenville, 67 Tex. 62, 2 S. W. 742; El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Parker v. Harris County Drainage District No. 2 (Tex. Civ. App.) 148 S. W. 351; Brennan v. City of Weatherford, 53 Tex. 330, 37 Am. Rep. 758; Crabb v. Celesta Independent School District, 105 Tex. 197, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146; State v. Bradshaw (Tex. Civ. App.) 228 S. W. 658; Town of Henderson v. Davis, 106 N. C. 88, 11 S. E. 573; Town of Searcy v. Yarnell, 47 Ark. 269, 1 S. W. 319; State v. Fuller, 96 Mo. 165, 9 S. W. 583; City of Houston v. Little (Tex. Civ. App.) 244 S. W. 247.

We are of opinion that the trial court was not authorized upon the facts disclosed by this record to render judgment in favor of appellees. It follows that the judgment should be reversed and judgment here rendered in favor of appellant, that plaintiff's and interveners' prayer for injunction be denied, and it has been so ordered.

Reversed and rendered.